**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARIO MEJIA GARCIA,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; DAVID T. WESLING, Field Office Director, ICE Enforcement and Removal Operations, Boston Field Office; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States,<br><br>Respondents. | C.A. No. ______________<br><br>PETITION FOR WRIT OF HABEAS CORPUS<br>28 U.S.C. § 2241<br><br>EMERGENCY ORDER REQUESTED |

**INTRODUCTION**

1. Petitioner Mario Mejia Garcia ("Petitioner" or "Mr. Mejia Garcia") is a thirty-two-year-old native and citizen of Mexico who has lived in the United States since May 2018. He resides in New Bedford, Massachusetts, where he works in construction installing drywall. He is unmarried, and his earnings support his young son, who lives in Mexico with the child's mother. He has never been in removal proceedings before, has never been ordered removed, and has never applied for any immigration benefit.

2. On September 21, 2026, during an immigration enforcement operation at or near his work site in New Bedford, Massachusetts, Petitioner stepped away to buy his lunch. Five officers of U.S. Immigration and Customs Enforcement ("ICE") arrested him on the street as he walked. In the course of handcuffing him behind his back, the officers injured his shoulder.

Petitioner told them he was in severe pain, and the officers moved the handcuffs to the front of his body before taking him to a physician. When the transport van arrived at the jail that night, Petitioner was left in the van through the night in the cold. He has since been confined at the Plymouth County Correctional Facility in Plymouth, Massachusetts, where he has been ill with diarrhea for days and where his shoulder continues to cause him pain.

3. Following his arrest, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear placing him in ordinary removal proceedings under 8 U.S.C. § 1229a, and DHS filed that charging document with the Chelmsford Immigration Court on September 22, 2026. DHS did not charge Petitioner as an arriving alien, and DHS did not place him in expedited removal. His first master calendar hearing is set for October 5, 2026, at 1:30 p.m., in person, before Immigration Judge Julian R. Nierva.

4. Petitioner has never received a bond hearing, a custody redetermination, or an individualized custody determination of any kind. Upon information and belief, Respondents take the position that no such hearing is available to him because, in their view, a person who entered the United States without inspection remains an "applicant for admission" detained without bond under 8 U.S.C. § 1225(b)(2)(A), no matter how long he has lived in this country or where he was arrested. That position rests on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and on the ICE Interim Guidance Regarding Detention Authority for Applicants for Admission dated July 8, 2025.

5. That position is foreclosed in this Circuit, because on August 13, 2026, the First Circuit held that "seeking admission" within the meaning of § 1225(b)(2)(A) "means seeking lawful entry," that a noncitizen who "already entered the country unlawfully" is therefore "not 'seeking admission,'" and that the detention of such a person, and his eligibility for release, "are

governed by § 1226(a), not § 1225(b)(2)(A)." *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094, 2026 U.S. App. LEXIS 24493, 2026 WL 2352042, slip op. at 4 (1st Cir. Aug. 13, 2026). The court of appeals affirmed both the preliminary injunction and the partial final judgment entered by this Court for a certified class of noncitizens arrested or detained in Massachusetts. Petitioner was arrested in Massachusetts, is detained in Massachusetts, and is a member of that class. The judgment in his favor has never been stayed.

6. On October 1, 2026, the Supreme Court granted certiorari in *Rhoney v. Barbosa da Cunha*, No. 26-104, to review the Second Circuit's decision on the same question. The grant of certiorari changes nothing about the law that binds this Court today. *Guerrero Orellana* remains the law of this Circuit, the class judgment entered by this Court remains in force, and nine courts of appeals now hold that noncitizens in Petitioner's position are detained, if at all, under § 1226(a). Respondents may not hold Petitioner without any custody determination in the hope that a future decision of the Supreme Court will retroactively supply the authority they lack today.

7. Petitioner accordingly brings this emergency petition for a writ of habeas corpus under 28 U.S.C. § 2241. As primary relief, he asks this Court to exercise its authority under 28 U.S.C. § 2243 to order his immediate release under appropriate conditions of supervision. In the alternative, he asks the Court to order Respondents to provide him, within seven days, an individualized bond hearing before an immigration judge at which the government bears the burden of justifying his continued detention under *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), and *Brito v. Garland*, 22 F.4th 240 (1st Cir. 2021), with release to follow if no such hearing is held. Courts in this District and in the District of Rhode Island have granted precisely that relief to detainees of the same Boston Field Office in the weeks since the First Circuit's decision. See *C.E.L. v. Hyde*, No. 1:26-cv-13925-WGY (D. Mass. Sept. 11, 2026) (Young, J.) (ECF No. 12)

(electronic order); *Orellana-Lopez v. Nessinger*, No. 1:26-cv-00650-MRD-PAS (D.R.I. Sept. 22, 2026) (DuBose, J.) (text order ordering release the same day).

8. Petitioner asks the Court to act on an emergency basis. He was injured during his arrest, he is ill in custody, his first hearing in removal proceedings is days away, and each day of confinement without any custody determination compounds an injury that no later order can repair. He also asks the Court to preserve its jurisdiction by prohibiting his transfer outside this District and his removal from the United States while this Petition is pending.

**PARTIES**

9. Petitioner Mario Mejia Garcia is a native and citizen of Mexico, born on August 15, 1994. His Alien Registration Number is A 240-154-609. He has resided in the United States since on or about May 12, 2018, and his residence before his detention was in New Bedford, Massachusetts. He is currently confined at the Plymouth County Correctional Facility, 26 Long Pond Road, Plymouth, Massachusetts 02360, within the District of Massachusetts. His native language is Spanish, and he speaks limited English.

10. Respondent Antone Moniz is the Superintendent of the Plymouth County Correctional Facility, which houses ICE detainees pursuant to an intergovernmental service agreement with U.S. Immigration and Customs Enforcement. Superintendent Moniz is Petitioner's immediate custodian and is sued in his official capacity. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434–39 (2004). Reference herein is intended to include any successor in office. See Fed. R. Civ. P. 25(d).

11. Respondent David T. Wesling is the Field Office Director of ICE Enforcement and Removal Operations, Boston Field Office, which has responsibility for enforcement and removal

operations in Massachusetts and which directed Petitioner's arrest and detention. He is sued in his official capacity. Reference herein is intended to include any successor in office.

12. Respondent David J. Venturella is the Acting Director of U.S. Immigration and Customs Enforcement. He is sued in his official capacity. Reference herein is intended to include any successor in office.

13. Respondent Markwayne Mullin is the Secretary of the United States Department of Homeland Security. He is sued in his official capacity. Reference herein is intended to include any successor in office.

14. Respondent Todd Blanche is the Acting Attorney General of the United States. He is sued in his official capacity. Reference herein is intended to include any successor in office.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, Section 9, Clause 2 of the United States Constitution (Suspension Clause). This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

16. Federal district courts have jurisdiction over habeas petitions brought by noncitizens challenging the lawfulness of immigration detention. *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007); see also *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). Section 1226(e) of Title 8 does not bar review of the statutory and constitutional questions presented here, because Petitioner challenges the legal framework under which Respondents claim authority to detain him and does not challenge any discretionary judgment made within that framework. *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018). The

jurisdictional bar in 8 U.S.C. § 1252(b)(9) does not extend to claims that challenge the legality of detention itself. *Aguilar*, 510 F.3d at 11.

17. This Court has jurisdiction over the proper respondent because Petitioner is confined within this District. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–43 (2004). The Superintendent of the Plymouth County Correctional Facility is Petitioner's immediate custodian for habeas purposes. See *Vasquez v. Reno*, 233 F.3d 688, 693 (1st Cir. 2000). The remaining Respondents are named as officials with legal authority over Petitioner's detention, transfer, and release.

18. Venue is proper in the District of Massachusetts because Petitioner is detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts, within the territorial jurisdiction of this Court. See *Vasquez*, 233 F.3d at 696.

19. Jurisdiction having attached upon the filing of this Petition against Petitioner's immediate custodian within this District, a subsequent transfer of Petitioner to another district would not divest this Court of jurisdiction. *Ex parte Endo*, 323 U.S. 283, 306 (1944); *Padilla*, 542 U.S. at 441. Petitioner files now, while he remains confined within this District, to secure that jurisdiction before any transfer.

## REQUIREMENTS OF 28 U.S.C. § 2243

20. The federal habeas statute provides that the Court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. If an order to show cause issues, the statute requires the respondent to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243.

21. Courts have long recognized the urgency that the habeas statute commands. The Great Writ affords "a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963), *overruled on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). Where, as here, a habeas petitioner alleges ongoing detention without any custody determination under a theory of detention authority that the court of appeals has rejected, swift relief is what Section 2243 requires.

22. No statutory exhaustion requirement applies to a Section 2241 challenge to the legality of immigration detention, and courts in this District have repeatedly declined to impose a prudential exhaustion requirement on detainees in Petitioner's posture. See *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 314 n.2 (D. Mass. 2025) (Saris, J.); *Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-cv-11740-AK, 2026 U.S. Dist. LEXIS 113837, at *10 (D. Mass. May 22, 2026) (Kelley, J.); *Miti v. Moniz*, 827 F. Supp. 3d 206, 216 (D. Mass. 2026) (Murphy, J.). As set out below, any administrative bond request would in any event be futile, because the agency's precedential decision and its binding internal guidance direct that no bond hearing be held for a person in Petitioner's position.

## FACTUAL ALLEGATIONS

### A. Petitioner's Residence, Work, and Family Ties

23. Petitioner is a native and citizen of Mexico who entered the United States without inspection on or about May 12, 2018, at the age of twenty-three. He has resided in the United States continuously since that entry, a period of more than eight years, and he lives in New Bedford, Massachusetts.

24. Petitioner's residence before his detention was in New Bedford, Massachusetts, where he lived at a fixed address. He is prepared to return to that residence upon release and to

comply with any reasonable conditions of supervision, including reporting requirements, address verification, and electronic monitoring if ordered.

25. Petitioner works in the construction trade installing drywall, and he has worked consistently throughout his residence in the United States. He has employment available to him upon release.

26. Petitioner is unmarried, and he is the father of one child, a son who lives in Mexico with the child's mother. Petitioner's earnings in the United States are the means by which he supports that child, and his detention has cut off that support.

**B. Petitioner's Immigration History**

27. Petitioner has no immigration history of any kind before his arrest in September 2026. He has never been placed in removal proceedings, has never been ordered removed, has never been subject to expedited removal, and has never been paroled into the United States. He has never applied for asylum, for a visa, or for any other immigration benefit.

**C. Petitioner's Criminal History**

28. Upon information and belief, Petitioner has no criminal convictions, and DHS has not charged him with any criminal ground of removability. Counsel has not yet obtained Petitioner's criminal record and will supplement this Petition promptly if that record discloses any matter bearing on custody. A pending, unadjudicated state charge is not a conviction and does not trigger mandatory detention under 8 U.S.C. § 1226(c).

**D. The September 2026 Arrest and the Injury Petitioner Suffered**

29. On September 21, 2026, ICE conducted an immigration enforcement operation at or near the construction site in New Bedford, Massachusetts, where Petitioner was working. Petitioner had stepped away from the site to buy his lunch. Five ICE officers stopped him on the

street as he walked and arrested him. The arrest occurred in the interior of Massachusetts, more than eight years after Petitioner's entry into the United States and far from any port of entry. Petitioner was not arrested at the border and was not seeking to enter the United States.

30. The officers handcuffed Petitioner with his hands behind his back. In the course of doing so, they wrenched his shoulder, which his family reports was pulled out of its socket. Petitioner told the officers that he was in severe pain and asked that the handcuffs be placed in front of his body because his shoulder had already been hurt. The officers then moved the handcuffs to the front. The officers took Petitioner to a physician before transporting him to a detention facility.

31. When the transport van carrying Petitioner and the other persons arrested in the operation arrived at the jail that evening, the detainees were held outside the facility, and Petitioner remained in the van through the cold night and was not brought inside and processed until the following day.

32. Upon information and belief, ICE arrested Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, issued under section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226, and 8 C.F.R. § 236.1(b). Section 236 is the statutory authority under which DHS itself elected to take Petitioner into custody.

33. Following his arrest, DHS served Petitioner with a Notice to Appear, Form I-862, in File No. A 240-154-609, placing him in removal proceedings under section 240 of the Immigration and Nationality Act, 8 U.S.C. § 1229a. Upon information and belief, the Notice to Appear alleges that Petitioner is present in the United States without having been admitted or paroled and charges him with removability under section 212(a)(6)(A)(i) of the Act, 8 U.S.C. § 1182(a)(6)(A)(i). DHS did not designate Petitioner an arriving alien, did not place him in expedited

removal under 8 U.S.C. § 1225(b)(1), and did not charge him with any criminal ground of removability.

**E. Petitioner's Detention at Plymouth and His Condition in Custody**

34. Since his arrest, Respondents have detained Petitioner at the Plymouth County Correctional Facility, 26 Long Pond Road, Plymouth, Massachusetts. The facility is a county jail that holds persons charged with and convicted of crimes, and Petitioner, who is held there in civil immigration custody, is confined alongside that population. See *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 31 (D. Mass. 2025) (Kobick, J.).

35. Petitioner has been ill in custody, suffering from diarrhea for several days. He is awakened at 5:00 a.m. to shower and eat breakfast, which consists of oatmeal with milk. At 11:00 a.m. he is given tuna and two slices of bread. At 5:00 p.m. he is given one or two sausages, a plantain, rice, and tuna. His family attributes his illness to the morning meal, and his shoulder continues to cause him pain.

**F. The Removal Proceedings**

36. DHS filed the Notice to Appear with the Chelmsford Immigration Court, 150 Apollo Drive, Suite 100, Chelmsford, Massachusetts 01824, on September 22, 2026. The immigration court has scheduled Petitioner's first master calendar hearing for October 5, 2026, at 1:30 p.m., to be conducted in person before Immigration Judge Julian R. Nierva.

37. Petitioner's retained counsel, Jacob S. Binnall of the Law Office of Jacob Binnall, PLLC, represents him in the removal proceedings.

38. Petitioner's proceedings are at their inception, and no decision on removability or relief has been made. Petitioner is therefore being held "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

**G. The Absence of Any Custody Determination**

39. At no point since his arrest has Petitioner been afforded a bond hearing, a custody redetermination, or an individualized determination by any neutral decisionmaker of whether he poses a danger to the community or a risk of flight that could justify his civil confinement.

40. Upon information and belief, Respondents take the position that no such hearing is available to Petitioner because, in their view, Petitioner is an "applicant for admission" detained under 8 U.S.C. § 1225(b)(2)(A) over whom an immigration judge has no bond jurisdiction. That position rests on *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and on the ICE Interim Guidance Regarding Detention Authority for Applicants for Admission issued on July 8, 2025, which instructs ICE officers that section 235 of the Act supplies the exclusive detention authority for all persons who entered without inspection, that release is available only through parole under 8 U.S.C. § 1182(d)(5), and that no immigration judge custody redetermination is available.

41. Petitioner is a member of the class certified by this Court in *Guerrero Orellana v. Moniz*, No. 1:25-cv-12664-PBS. He was arrested in Massachusetts and is detained in Massachusetts. His removal proceedings are pending before an immigration court located in Massachusetts. DHS has never alleged that he was admitted or paroled. He is not in expedited removal proceedings and is not subject to an expedited removal order. He has no conviction and does not meet the criteria for mandatory detention under 8 U.S.C. § 1226(c). He is not subject to a final order of removal and is not detained under 8 U.S.C. § 1231.

**H. The Harm of Continued Detention**

42. Petitioner's detention is civil in character, and its only legitimate regulatory purposes are ensuring his appearance at removal proceedings and protecting the community.

Neither purpose has been found by any neutral decisionmaker to require his confinement. He lives at a fixed address in New Bedford, he has steady work, he has no criminal convictions, and he has every incentive to appear and defend his case. Whether the government could carry its burden of proving danger or flight risk is precisely the question that an individualized bond hearing exists to answer, and Respondents have refused to allow the question to be asked.

43. Petitioner's continued detention is causing immediate and substantial harm. He was injured during his arrest, remains in pain, and is ill, and his confinement has cut off the income on which his son in Mexico depends. His first hearing in removal proceedings is days away, and his detention at Plymouth impairs his ability to meet with counsel, to gather the documents and witnesses needed to defend against removal, and to prepare for that hearing.

44. Petitioner also faces a substantial risk of transfer. Upon information and belief, Respondents regularly transfer detainees from the Plymouth County Correctional Facility to detention facilities outside this District, including facilities in New Hampshire and Louisiana, often within days of arrest and without notice to counsel. A transfer would separate Petitioner from his counsel, from the Massachusetts immigration court adjudicating his case, and from the protections this Court has recognized for class members detained in Massachusetts, and it would threaten to place him beyond the practical reach of the relief he seeks before this Court can act.

## LEGAL BACKGROUND

### A. Detention Authority Under 8 U.S.C. §§ 1225, 1226, and 1231

45. The Immigration and Nationality Act ("INA") provides two principal sources of detention authority for noncitizens whose removal proceedings are pending. Detention pending a decision on removal is governed by 8 U.S.C. § 1226, and the detention of noncitizens whose

proceedings have concluded in a final order of removal that awaits execution is governed by 8 U.S.C. § 1231.

46. Section 1226(a) authorizes the arrest and detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). It also authorizes release on bond or conditional parole. *Id.* § 1226(a)(2). Detention under § 1226(a) is discretionary, and the statute contemplates an individualized custody determination that the noncitizen may ask an immigration judge to review. See *Jennings*, 583 U.S. at 288–89; 8 C.F.R. §§ 236.1(c)(8), (d), 1003.19.

47. Section 1226(c) provides for the mandatory detention of certain noncitizens who are removable on enumerated criminal or terrorism-related grounds. 8 U.S.C. § 1226(c)(1). Petitioner has no conviction, DHS has charged him with no criminal ground of removability, and § 1226(c) does not apply to him.

48. Section 1225(b) governs the inspection and detention of noncitizens who are seeking admission at the border or who are otherwise subject to expedited removal. 8 U.S.C. § 1225(b)(1)–(2). Section 1225(b)(2)(A) directs that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," the noncitizen "shall be detained" for removal proceedings under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A).

## B. The First Circuit Has Held That Noncitizens in Petitioner's Position Are Detained Under § 1226(a)

49. In *Guerrero Orellana v. Moniz*, the First Circuit affirmed this Court's preliminary injunction and partial final judgment in favor of a certified class of noncitizens arrested or detained in Massachusetts who entered the United States without inspection and whom DHS had

reclassified as mandatory detainees under § 1225(b)(2)(A). 2026 U.S. App. LEXIS 24493, 2026 WL 2352042, slip op. at 4, 54 (1st Cir. Aug. 13, 2026). The court of appeals held that "a noncitizen is 'seeking admission' if they are trying to gain lawful entry into the United States after inspection and authorization by an immigration officer," *id.*, slip op. at 19, and that class members who "had already entered the country without inspection" are therefore "not 'seeking admission,'" *id.*, slip op. at 21. "In sum," the court concluded, its "careful study of the disputed statutory texts" led it "to join the Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits in holding that noncitizens like Guerrero Orellana who are present in the United States without admission are not subject to § 1225(b)(2)(A)'s mandatory detention provision, but rather, are governed by § 1226." *Id.*, slip op. at 34.

50. The First Circuit described the agency's reading in *Matter of Yajure Hurtado* and the July 8, 2025 ICE guidance on which Respondents' position rests, *id.*, slip op. at 7–8, and rejected that reading in full. The court held that the district court "was right to order the government to release Guerrero Orellana or provide him with a bond hearing." *Id.*, slip op. at 4.

51. The class whose judgment the First Circuit affirmed was certified on October 30, 2025, and modified on December 19, 2025. It includes noncitizens arrested or detained in Massachusetts, or within the jurisdiction of a Massachusetts immigration court, who were never admitted or paroled, and it excludes noncitizens subject to expedited removal and those subject to mandatory detention under § 1226(c). *Id.*, slip op. at 10 n.5. On December 19, 2025, this Court entered partial summary judgment and partial final judgment declaring that DHS's policy of detaining class members under § 1225(b)(2)(A) without access to a bond hearing violates the INA and that class members are detained under § 1226(a) and must be considered for release on bond.

*Guerrero Orellana v. Moniz*, 813 F. Supp. 3d 185 (D. Mass. 2025) (Saris, J.). That judgment has never been stayed, and it binds Respondents as to Petitioner today.

52. The First Circuit's decision reflects the overwhelming consensus of the courts of appeals. Nine circuits have now held that noncitizens who entered without inspection and were arrested in the interior are detained under § 1226(a). See *Guerrero Orellana*, 2026 WL 2352042 (1st Cir.); *Barbosa da Cunha v. Freden*, 175 F.4th 61, 70–71 (2d Cir. 2026); *Buele Morocho v. Warden Philadelphia FDC*, Nos. 26-1150, 26-1454 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, Nos. 25-7044, 25-7050 (4th Cir. Sept. 10, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 723 (6th Cir. 2026); *Cirrus Rojas v. Olson*, No. 25-3127, 2026 WL 2198315, at *2 (7th Cir. July 30, 2026); *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1233, 1246 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1261–62 (11th Cir. 2026). Two circuits have adopted the agency's reading, see *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), and neither decision binds this Court, because the First Circuit considered both and declined to follow them. *Guerrero Orellana*, 2026 WL 2352042, slip op. at 29.

### C. The Supreme Court's Grant of Certiorari Does Not Alter the Law That Binds This Court

53. On October 1, 2026, the Supreme Court granted the government's petition for a writ of certiorari in *Rhoney v. Barbosa da Cunha*, No. 26-104, to review the Second Circuit's decision. The question presented is whether § 1225(b)(2)(A) mandates the detention, pending removal proceedings, of noncitizens who are present in the United States without having been admitted. Argument is not expected before early 2027, and a decision will follow later still.

54. A grant of certiorari in a case arising from another circuit does not vacate, stay, or otherwise diminish the precedential force of a decision of the First Circuit. "Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." *Eulitt ex rel. Eulitt v. Me. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004). No supervening authority exists, because the Supreme Court has decided nothing, and *Guerrero Orellana* therefore remains the law of this Circuit while this Court's class judgment remains in force and unstayed. That judgment has been in effect, unstayed, since December 19, 2025, and the government's appeal from it has now failed.

55. Nor does the pendency of the Supreme Court's review supply any reason to withhold relief in the interim. Throughout the period in which the certiorari petitions were pending, courts in this Circuit continued to order the release of, or bond hearings for, detainees in Petitioner's posture. See *C.E.L. v. Hyde*, No. 1:26-cv-13925-WGY (D. Mass. Sept. 11, 2026) (Young, J.) (ECF No. 12) (allowing petition and ordering a bond hearing within seven days at which the government bears the burden under *Hernandez-Lara*); *Orellana-Lopez v. Nessinger*, No. 1:26-cv-00650-MRD-PAS (D.R.I. Sept. 22, 2026) (DuBose, J.) (text order granting petition and ordering release the same day where the Form I-200 arrest warrant itself invoked section 236 of the Act); *Pimentel v. Wesling*, No. 26-cv-494-JJM-PAS, 2026 U.S. Dist. LEXIS 170596 (D.R.I. July 31, 2026) (McConnell, C.J.) (ordering immediate release of a *Guerrero Orellana* class member held by the Boston Field Office). In *Orellana-Lopez*, the government conceded that relief was likely under the governing precedent and contested only the remedy. Petitioner's liberty cannot be made to wait on the outcome of a case in which no decision will issue for many months, and the question whether he may be held at all in the meantime is governed by the law of this Circuit as it stands today.

**D. Constitutional Requirements**

56. Civil immigration detention may be used only to serve legitimate regulatory purposes, principally ensuring appearance at removal proceedings and protecting the community, and it must be accompanied by adequate procedural safeguards under the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Due Process Clause of the Fifth Amendment applies to all persons within the United States, including noncitizens. *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Zadvydas*, 533 U.S. at 693.

57. In the First Circuit, due process requires meaningful procedural protections in custody determinations, including the proper allocation of the burden of proof. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27, 39–41 (1st Cir. 2021). A bond hearing under § 1226(a) comports with due process only if the government bears the burden of proving by clear and convincing evidence that the noncitizen poses a danger to the community, or by a preponderance of the evidence that the noncitizen poses a risk of flight. *Id.* at 41. The First Circuit reaffirmed that allocation of the burden in *Brito v. Garland*, 22 F.4th 240, 251–52 (1st Cir. 2021), affirming a declaratory judgment to that effect entered by this Court.

58. The private interest at stake in these determinations, the interest in physical liberty, is "particularly weighty." *Hernandez-Lara*, 10 F.4th at 32. That interest informs the balancing required by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), in any habeas challenge to civil immigration detention.

**E. An Administrative Bond Request Would Be Futile**

59. The Board of Immigration Appeals held in *Matter of Yajure Hurtado* that "Immigration Judges lack authority to hear bond requests or to grant bond to aliens, like the

respondent, who are present in the United States without admission." 29 I. & N. Dec. at 225. That decision remains the Board's precedent, binding on every immigration judge under 8 C.F.R. § 1003.1(g), and the agency has not withdrawn it in the face of nine contrary decisions of the courts of appeals. The July 8, 2025 ICE guidance implementing that position likewise remains in effect and directs ICE attorneys to oppose bond as a matter of agency policy.

60. For these reasons, awaiting an immigration judge bond determination is futile in two independent respects. First, Respondents have taken the formal position that no immigration judge bond hearing is available to Petitioner at all, leaving no administrative remedy to exhaust. Second, even were a hearing nominally provided, the agency's systemic refusal to treat Petitioner as a § 1226(a) detainee means that the procedural protections *Hernandez-Lara* and *Brito* require, beginning with allocation of the burden of proof to the government, would not be applied absent an order of this Court. Courts reviewing bond hearings held for Plymouth detainees have repeatedly found those hearings constitutionally deficient on precisely that ground. See *Atariguana-Buele v. Warden, Plymouth Corr. Facility*, No. 26-12168-LTS, 2026 U.S. Dist. LEXIS 141138, at *7–8 (D. Mass. June 25, 2026) (Sorokin, J.); *Miti*, 827 F. Supp. 3d at 217–20; *Garcia v. Hyde*, 817 F. Supp. 3d 112, 131 (D.R.I. 2025) (McConnell, C.J.) ("[D]ue process is not satisfied . . . by rubberstamp denials [of bond]"). An administrative remedy that is unavailable in form, and unfaithful to governing law in substance, is no remedy at all.

**F. This Court's Authority to Order Release**

61. The federal habeas statute directs that the court "shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243. Release has always been the traditional habeas remedy, and the writ exists to secure it. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

62. The First Circuit has long recognized the authority of a district court to release a habeas petitioner where the petitioner raises substantial claims and extraordinary circumstances make release necessary to make the habeas remedy effective. *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam). Courts in this District have exercised that authority in immigration habeas cases. *Savino v. Souza*, 453 F. Supp. 3d 441, 453 (D. Mass. 2020) (Young, J.); see also *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001).

63. Courts in this Circuit have exercised that authority to order the outright release of detainees in Petitioner's posture. In *Sampiao v. Hyde*, this Court granted the Section 2241 petition of a Brazilian national detained at the Plymouth County Correctional Facility and ordered his immediate release. 799 F. Supp. 3d at 34. In *Pimentel*, *Orellana-Lopez*, and *Morales v. Hyde*, No. 26-cv-093-JJM-PAS (D.R.I. Feb. 24, 2026) (ECF No. 10), the District of Rhode Island ordered the immediate release of Boston Field Office detainees held without any custody determination on the § 1225(b)(2)(A) theory, and in *Morales* the court declined to permit the agency to impose monitoring equipment as a condition of that release.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1226(a)

64. Petitioner realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The INA authorizes detention under 8 U.S.C. § 1226(a) only "pending a decision on whether the alien is to be removed from the United States," and it provides that the noncitizen may be released on bond or conditional parole following an individualized custody determination. 8 U.S.C. § 1226(a)(1)–(2). Noncitizens detained under § 1226(a) are entitled to a meaningful

opportunity to seek release, including an individualized bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d), 1003.19.

66. Petitioner is detained pending a decision in his removal proceedings under 8 U.S.C. § 1229a, and his custody therefore falls within § 1226(a). Section 1226(c) does not reach him because he has no qualifying conviction and DHS has charged him with no criminal ground of removability. Section 1225(b)(2)(A) does not reach him because, under the binding precedent of this Circuit, a noncitizen who "already entered the country unlawfully" is "not 'seeking admission,'" and his detention and eligibility for release "are governed by § 1226(a), not § 1225(b)(2)(A)." *Guerrero Orellana*, 2026 WL 2352042, slip op. at 4.

67. Petitioner is a member of the class in whose favor this Court entered partial final judgment on December 19, 2025, and that judgment, affirmed by the First Circuit and never stayed, declares that class members are detained under § 1226(a) and must be considered for release on bond.

68. DHS's own charging documents confirm the point, because, upon information and belief, DHS arrested Petitioner on a Form I-200 warrant issued under section 236 of the Act, charged him as a person present in the United States without admission or parole, declined to designate him an arriving alien, and placed him in ordinary removal proceedings under section 240. Having invoked the arrest authority and the process that attend § 1226(a) detention, Respondents cannot claim the custody authority of § 1225(b) in order to deny the bond hearing that § 1226(a) requires. See *Orellana-Lopez*, No. 1:26-cv-00650-MRD-PAS (D.R.I. Sept. 22, 2026) (text order).

69. Petitioner has not been provided an individualized bond hearing or any custody determination. Because Petitioner is detained under § 1226(a) without any such determination, his

continued detention exceeds the authority granted by the INA and is unlawful. See *Hernandez-Lara*, 10 F.4th at 41; *Brito*, 22 F.4th at 251–52.

70. The appropriate remedy is Petitioner's immediate release from custody under this Court's authority under 28 U.S.C. § 2243. In the alternative, the Court should order a constitutionally adequate bond hearing consistent with § 1226(a), 8 C.F.R. § 1003.19, and the standards set forth in *Hernandez-Lara* and *Brito*, to be held within seven days, with release to follow if no such hearing is held.

**COUNT II**

**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

71. Petitioner realleges and incorporates by reference all preceding paragraphs.

72. Civil immigration detention is constitutionally permissible only to serve legitimate regulatory purposes, and it must be accompanied by procedural safeguards commensurate with the deprivation of liberty it inflicts. *Zadvydas*, 533 U.S. at 690. Under binding First Circuit precedent, a custody determination under § 1226(a) satisfies due process only if the government bears the burden of proving, by clear and convincing evidence, that the noncitizen poses a danger to the community, or, by a preponderance of the evidence, that the noncitizen poses a risk of flight. *Hernandez-Lara*, 10 F.4th at 41; *Brito*, 22 F.4th at 251–52.

73. Petitioner has been afforded none of these protections, having received no custody determination at all, and Respondents' position is that none is required, a position that, if accepted, would categorically deprive Petitioner of the process the First Circuit has held the Constitution requires.

74. The *Mathews v. Eldridge* balancing weighs decisively in Petitioner's favor. His private interest in physical liberty is "particularly weighty," *Hernandez-Lara*, 10 F.4th at 32, and

that interest is heightened here by the injury he suffered during his arrest and by his illness in custody. The risk of erroneous deprivation is substantial because no neutral decisionmaker has ever assessed flight risk or dangerousness on this record. The government's interest in detention is at its lowest where, as here, the noncitizen lives at a fixed address in the Commonwealth, has steady employment, has no criminal convictions, and has every incentive to appear.

75. Absent a constitutionally adequate custody determination at which the government bears the burden of justifying continued confinement, Petitioner's detention violates the Due Process Clause of the Fifth Amendment. The appropriate remedy is immediate release on reasonable conditions of supervision or, in the alternative, a bond hearing conducted under the standards of *Hernandez-Lara* and *Brito* within seven days.

## COUNT III

## UNLAWFUL RECLASSIFICATION OF PETITIONER UNDER 8 U.S.C. § 1225(b)

76. Petitioner realleges and incorporates by reference all preceding paragraphs.

77. To the extent Respondents purport to detain Petitioner under 8 U.S.C. § 1225(b)(2)(A) and on that basis deny him any custody determination, that reclassification is contrary to the statute as construed by the First Circuit, contrary to the declaratory judgment entered by this Court in *Guerrero Orellana*, and contrary to the Due Process Clause.

78. Petitioner entered the United States on or about May 12, 2018, and has resided in the interior of the United States for more than eight years. He was arrested in the interior and placed in removal proceedings under section 240. He is not "seeking admission" within the meaning of § 1225(b)(2)(A). *Guerrero Orellana*, 2026 WL 2352042, slip op. at 19, 21, 34.

79. Following *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024), this Court owes no deference to the Board's contrary reading of the statute in *Matter of Yajure Hurtado*,

and the First Circuit has already rejected that reading. The grant of certiorari in *Rhoney v. Barbosa da Cunha* does not revive it.

80. DHS's own conduct independently defeats the reclassification, because, upon information and belief, DHS arrested Petitioner under section 236 of the Act, charged him as a person present without admission under section 212(a)(6)(A)(i), declined to designate him an arriving alien, and invoked the ordinary section 240 removal process. An agency that has itself invoked the arrest authority of § 1226 and the process that attends § 1226(a) detention cannot be heard to claim, for the sole purpose of denying a bond hearing, that the same person is a mandatory detainee under a provision reserved for noncitizens seeking lawful entry at the border.

**COUNT IV**

**PETITIONER IS ENTITLED TO IMMEDIATE RELEASE FROM UNLAWFUL CUSTODY**

81. Petitioner realleges and incorporates by reference all preceding paragraphs.

82. Petitioner seeks relief in a defined order of preference. Primarily, he seeks an order directing his immediate release from custody under appropriate conditions of supervision. In the alternative, he asks the Court to direct Respondents to provide him an individualized bond hearing before an immigration judge within seven days, applying the burdens of proof set forth in *Hernandez-Lara* and *Brito*, with release to follow if no such hearing is held.

83. Courts within the First Circuit apply the four-factor test for preliminary injunctive relief articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008), under which the Court considers the movant's likelihood of success on the merits, the prospect of irreparable harm absent relief, the balance of equities, and the public interest. Each factor weighs strongly in favor of Petitioner's immediate release.

84. Petitioner is likely to succeed on the merits. The First Circuit has held that noncitizens in his position are detained under § 1226(a) and are entitled to a bond hearing, this Court has entered a class judgment to the same effect in his favor, and the First Circuit has held that § 1226(a) detention without a constitutionally adequate bond hearing violates due process. *Guerrero Orellana*, 2026 WL 2352042, slip op. at 4, 34; *Hernandez-Lara*, 10 F.4th at 41. Release is the natural remedy for an independent reason. Respondents' power to detain must be grounded in a specific provision of the INA, and upon information and belief the only detention authority Respondents claim over Petitioner is § 1225(b)(2)(A). Once that provision is held inapplicable, Respondents are left holding Petitioner under a statute that does not reach him, and the writ issues to end custody that has no lawful footing. That is the course the District of Rhode Island has taken for Boston Field Office detainees in the same posture. See *Pimentel*, 2026 U.S. Dist. LEXIS 170596; *Orellana-Lopez*, No. 1:26-cv-00650-MRD-PAS (text order); *Morales*, No. 26-cv-093-JJM-PAS (ECF No. 10).

85. Petitioner faces irreparable harm absent immediate release, because the continuing loss of physical liberty is itself irreparable injury, and "every day Petitioner spends in prison is irreparable harm." *Miti*, 827 F. Supp. 3d at 216. That harm is compounded here by the injury Petitioner suffered during his arrest, by his illness in custody, by the loss of the income that supports his child, and by the impairment of his ability to prepare for a master calendar hearing now days away. A transfer outside this District would compound each of those harms and would impair his access to counsel and his ability to participate in this action.

86. The balance of equities tips decisively in Petitioner's favor. He lives and works in Massachusetts, has no criminal convictions, and has never been found by any decisionmaker to present a flight risk or a danger to the community. Respondents have no legitimate interest in the

continued civil detention, without any custody determination, of a person whom the law of this Circuit places under § 1226(a), and the burden on Respondents of releasing Petitioner under conditions of supervision is minimal.

87. The public interest supports immediate release, because ensuring that immigration detention complies with the statute as construed by the court of appeals and with the Constitution promotes the rule of law and preserves meaningful judicial oversight of executive detention. The public interest is also served by allowing a working man with no criminal convictions to return to his home and his trade, subject to whatever conditions of supervision this Court deems appropriate, and the public gains nothing from his continued confinement at public expense.

88. Independent of the *Winter* framework, this Court possesses authority under 28 U.S.C. § 2243 to order Petitioner's release where he has raised substantial habeas claims and extraordinary circumstances make release necessary to render the habeas remedy effective. *Woodcock*, 470 F.2d at 94; *Savino*, 453 F. Supp. 3d at 453; *Mapp*, 241 F.3d at 226. Petitioner has plainly raised substantial claims, each of which has been credited by the First Circuit, by this Court, and by eight other courts of appeals. Extraordinary circumstances are likewise present, and they include the following.

a. Respondents assert custody authority under § 1225(b)(2)(A) that the First Circuit has squarely rejected and that this Court's unstayed class judgment forecloses as to Petitioner.

b. Respondents injured Petitioner during his arrest, and he remains in pain and ill in custody.

c. Respondents held Petitioner in a transport van through a cold night upon his arrival at the jail.

d. The July 8, 2025 ICE guidance and *Matter of Yajure Hurtado* structurally deny immigration judge bond review to detainees in Petitioner's posture, foreclosing the ordinary administrative remedy.

e. Petitioner's first master calendar hearing is scheduled for October 5, 2026, and his detention impairs his ability to prepare for it and to consult with counsel.

f. Petitioner is the sole source of financial support for his young son, and each day of detention inflicts compounding harm on that child.

g. Petitioner has no criminal convictions, has significant ties to Massachusetts, and has never been found by any neutral decisionmaker to pose a flight risk or a danger to the community.

h. Petitioner faces a substantial risk of transfer outside this District, which would separate him from counsel and from the immigration court adjudicating his case.

89. Because Petitioner has raised substantial habeas claims and has demonstrated extraordinary circumstances making release necessary to render the habeas remedy effective, this Court should order Petitioner's immediate release under appropriate conditions of supervision.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241;

2. Pursuant to 28 U.S.C. § 2243, issue an Order to Show Cause directing Respondents to show cause, on an emergency basis, why this Petition should not be granted;

3. Order that Respondents shall not transfer Petitioner outside the District of Massachusetts and shall not remove Petitioner from the United States during the pendency of this Petition, and that Respondents shall provide seventy-two hours' advance notice on the docket of this proceeding of any planned transfer of Petitioner within this District;

4. Declare that:

   a. Petitioner is detained under 8 U.S.C. § 1226(a) and is a member of the class in whose favor this Court entered judgment in *Guerrero Orellana v. Moniz*, No. 1:25-cv-12664-PBS;

   b. Petitioner's continued detention without an individualized, constitutionally adequate custody determination violates 8 U.S.C. § 1226(a) and the Due Process Clause of the Fifth Amendment; and

   c. Respondents' reclassification of Petitioner as a mandatory detainee under 8 U.S.C. § 1225(b)(2)(A) is unlawful;

5. Issue a Writ of Habeas Corpus ordering Petitioner's immediate release from custody on appropriate conditions of supervision pursuant to 28 U.S.C. § 2243, and order Respondents to return to Petitioner all property seized from him at the time of his arrest;

6. In the alternative to paragraph 5, order Respondents to provide Petitioner, within seven days of the Court's order, an individualized bond hearing before an Immigration Judge at which the government bears the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or by a preponderance of the evidence that Petitioner poses a risk of flight, at which the

Immigration Judge considers conditions of release and Petitioner's ability to pay in setting any bond, and order that Petitioner be released forthwith on reasonable conditions if Respondents fail to provide such a hearing within the time ordered;

7. Order Respondents to file a status report within forty-eight hours of any bond hearing stating whether Petitioner has been released and, if bond was denied, the reasons for the denial;

8. Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), and on any other basis justified under law; and

9. Grant such other and further relief as the Court deems just and proper.

Dated: October 2, 2026

Respectfully submitted,

MARIO MEJIA GARCIA,
By his attorney,

Jacob S. Binnall (BBO No. 712846)
Law Office of Jacob Binnall, PLLC
43 Park Street #17
Framingham, MA 01702
Telephone: (508) 656-4540
Email: jacob@attorneybinnall.com
Counsel for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, Jacob S. Binnall, am counsel of record for Petitioner Mario Mejia Garcia, and I submit this verification on his behalf pursuant to 28 U.S.C. § 2242, which permits a habeas application to be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." Petitioner is in immigration custody at the Plymouth County Correctional Facility, his primary language is Spanish, and counsel has not been able to obtain Petitioner's personal signature in advance of this emergency filing. The factual statements made in the foregoing Petition for Writ of Habeas Corpus are based on Petitioner's communications to counsel and to his family, on counsel's communications with Petitioner's family members, and on the documentary record in counsel's possession. I declare under penalty of perjury under the laws of the United States of America that the foregoing factual allegations are true and correct to the best of my knowledge, information, and belief.

Executed on October 2, 2026, at Framingham, Massachusetts.

Dated: October 2, 2026

Respectfully submitted,

MARIO MEJIA GARCIA,
By his attorney,

Jacob S. Binnall (BBO No. 712846)
Law Office of Jacob Binnall, PLLC
43 Park Street #17
Framingham, MA 01702
Telephone: (508) 656-4540
Email: jacob@attorneybinnall.com
Counsel for Petitioner