**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| MARIO MEJIA GARCIA,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility; DAVID T. WESLING, Field Office Director, ICE Enforcement and Removal Operations, Boston Field Office; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States,<br><br>Respondents. | ) | C.A. No. 1:26-cv-14497-DJC |

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO HOLD PETITION IN ABEYANCE AND REQUEST FOR PROMPT ADJUDICATION OF THE PETITION**

Petitioner Mario Mejia Garcia ("Petitioner"), through undersigned counsel, respectfully opposes Respondents' Motion to Hold Petition in Abeyance, ECF No. 6, and asks the Court to deny that motion and to grant the Petition for Writ of Habeas Corpus, ECF No. 1, without further delay. On October 2, 2026, the Court ordered Respondents to "answer or otherwise respond to the Petition no later than October 16, 2026." ECF No. 4 ¶ 2. On the last day of that period Respondents filed no answer, no return, no declaration, and no argument that Petitioner's detention is lawful. They represented instead that "all parties agree that the Petitioner is eligible for a bond hearing before the Executive Office for Immigration Review ('EOIR') in light of the First Circuit's decision in *Guerrero-Orellana*," ECF No. 6 at 1, and on the strength of that concession asked the Court to set the Petition aside "until Petitioner's bond hearing is completed," *id.*, even though no

bond hearing has been scheduled, Respondents propose no date by which one will be held, and nothing in their filing commits them to holding one at all.

The relief Respondents seek would reward the very default the Petition challenges. Respondents now concede that Petitioner, who has been confined at the Plymouth County Correctional Facility since September 21, 2026, without a bond hearing or an individualized custody determination of any kind, is detained under 8 U.S.C. § 1226(a) and is entitled to the hearing he has never received. When the custodian concedes that the statute governing a detention requires process that has been withheld, the remaining task for the habeas court is to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Because Respondents have offered no lawful basis for Petitioner's continued confinement and no justification for deferring decision, the Court should deny the motion and order Petitioner's immediate release on reasonable conditions of supervision or, at a minimum, order that he receive within seven days a bond hearing at which the government bears the burden established in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021), with release to follow if no such hearing is held.

## BACKGROUND

Petitioner is a thirty-two-year-old native and citizen of Mexico who has lived in the United States since May 2018 and who, before his detention, lived in New Bedford and worked in construction installing drywall. ECF No. 1 ¶¶ 1, 23–25. Five officers of U.S. Immigration and Customs Enforcement ("ICE") arrested him on a New Bedford street on September 21, 2026, injuring his shoulder in the course of handcuffing him, and Respondents have confined him at the Plymouth County Correctional Facility since that day. *Id.* ¶¶ 2, 29–31, 34. The Department of Homeland Security ("DHS") placed him in ordinary removal proceedings under 8 U.S.C. § 1229a, charged him as a person present without admission or parole, declined to designate him an arriving

alien, and charged no criminal ground of removability, and Petitioner has no criminal conviction. *Id.* ¶¶ 3, 28, 33. He has never received a bond hearing, a custody redetermination, or an individualized custody determination of any kind. *Id.* ¶¶ 4, 39.

Petitioner filed the Petition on October 2, 2026. ECF No. 1. The same day, the Court directed service on Respondents and the United States Attorney, ordered Respondents to answer or otherwise respond by October 16, 2026, and prohibited Petitioner's transfer out of this District without advance notice and his removal from the United States pending further order. ECF No. 4 ¶¶ 1, 2, 4(a).

On October 16, 2026, counsel for Respondents entered an appearance, ECF No. 5, and Respondents filed the present motion, ECF No. 6. The motion disputes none of the Petition's factual allegations, identifies no statutory authority for Petitioner's detention other than § 1226(a), does not contend that Petitioner presents a danger to the community or a risk of flight, and does not represent that a bond hearing has been requested, calendared, or scheduled. *See id.* at 1. It states that "all parties agree that the Petitioner is eligible for a bond hearing," that "[d]epending on the outcome of such hearing, this Petition may become moot," and that Respondents "oppose immediate release of Petitioner, given his eligibility for a bond hearing." *Id.* In a footnote, Respondents "reserve all rights to appeal," "incorporate by reference the legal arguments they presented in *Guerrero Orellana*," and predict that "the dispositive issue in this matter is expected to be resolved before the Supreme Court." *Id.* at 1 n.1. The only authority the motion cites for the relief it requests is a bare docket citation to *Pierre v. Wesling*, No. 26-cv-14075-WGY (D. Mass. 2026), offered without parenthetical, quotation, or description. *Id.* at 1.

As of the date of this filing, no bond hearing has been scheduled in the Chelmsford Immigration Court, and Respondents have not advised undersigned counsel of any date on which one will be held.

## ARGUMENT

### I. RESPONDENTS' CONCESSION RESOLVES THE MERITS AND THE PETITION SHOULD BE GRANTED NOW

#### A. Respondents Concede That Petitioner Is Detained Under § 1226(a) and Offer No Lawful Basis for Holding Him Without Any Custody Determination

The Petition presents one controlling question, which is whether Respondents may hold Petitioner without any bond hearing on the theory that 8 U.S.C. § 1225(b)(2)(A) mandates his detention. *See* ECF No. 1 ¶¶ 4–5, 40, 64–80. The First Circuit has answered that question, explaining that, "[b]ecause we conclude that the term 'seeking admission' means seeking lawful entry, and Guerrero Orellana already entered the country unlawfully, we hold that he is not 'seeking admission,'" and agreeing that the detention of the petitioner and his fellow class members, and their eligibility for release, "are governed by § 1226(a), not § 1225(b)(2)(A)," such that "the district court was right to order the government to release Guerrero Orellana or provide him with a bond hearing." *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094, 2026 WL 2352042, slip op. at 5 (1st Cir. Aug. 13, 2026). Respondents now agree that the decision governs this case, and they identify no other source of authority for Petitioner's confinement. ECF No. 6 at 1. Nor do they dispute that Petitioner, who was arrested and is detained in Massachusetts and has never been admitted or paroled, is a member of the class in whose favor this Court entered partial final judgment declaring that class members are detained under § 1226(a) and must be considered for release on bond, a judgment the First Circuit has now affirmed. ECF No. 1 ¶¶ 41, 51, 67.

That concession carries a necessary consequence, because § 1226(a) authorizes detention only "pending a decision on whether the alien is to be removed from the United States," and it expressly authorizes release of the detainee "on . . . bond" or on "conditional parole." 8 U.S.C. § 1226(a)(2). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Civil immigration detention therefore satisfies due process only when it serves the legitimate purposes of securing the noncitizen's appearance or protecting the community, and only when those purposes are tested through adequate procedures. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In this Circuit, a custody determination under § 1226(a) satisfies due process only if the government proves by clear and convincing evidence that the noncitizen is dangerous or by a preponderance of the evidence that he presents a risk of flight. *Hernandez-Lara*, 10 F.4th at 41. Respondents have held Petitioner for nearly four weeks under a statute that, by their own account, entitled him to that process from the outset, and they have afforded him none of it. Nothing in the record, and nothing in Respondents' motion, suggests that any official has ever determined that Petitioner's confinement serves a legitimate purpose.

Respondents' only stated objection to relief is that they "oppose immediate release of Petitioner, given his eligibility for a bond hearing." ECF No. 6 at 1. That objection concerns the form of the remedy, which Petitioner addresses in Part IV below, and it supplies no reason to defer deciding whether relief should issue, because Respondents have conceded every proposition on which that decision depends. Having been ordered to answer or otherwise respond, and having elected to contest neither the facts alleged in the Petition nor the legal conclusion that follows from them, Respondents have left the Court with a Petition that is, in every material respect, unopposed on the merits.

### B. Sessions of This Court Presented With the Same Concession Have Granted the Petition and Set a Deadline for the Hearing

The posture Respondents present here is a familiar one in this District, and the sessions of this Court that have confronted it have resolved the petition and imposed a deadline, leaving nothing to Respondents' discretion. In *C.E.L. v. Hyde*, Respondents likewise did "not contest that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is eligible for a bond hearing," and they opposed immediate release on the ground that the petitioner had not first requested a hearing in immigration court. No. 1:26-cv-13925-WGY, slip op. at 2 (D. Mass. Sept. 11, 2026) (Young, J.) (ECF No. 12). Judge Young declined to deny the petition on that basis, construed the petition as a request for a bond hearing and ordered Respondents to construe it the same way, allowed the petition, ordered that the hearing be held within seven days with the government bearing the burden prescribed by *Hernandez-Lara*, and ordered a status report within ten days. *Id.* at 2–3.

In *Vania Ramos v. Westling*, Respondents conceded that the petitioner was detained under § 1226(a) and was "bond eligible," and they asked that the petition "be dismissed or held in abeyance pending the results of the [scheduled] bond hearing." No. 1:26-cv-10358-IT, slip op. at 2 (D. Mass. Feb. 2, 2026) (Talwani, J.) (ECF No. 9). Judge Talwani declined that invitation and granted the petition, ordering that the bond hearing proceed as scheduled and that any decision continuing detention "set forth the reasons for the continued detention." *Id.* Because Respondents in that case had at least identified a scheduled hearing date, while Respondents here identify none, the request for abeyance in this case stands on weaker footing still than the one Judge Talwani declined.

Since the First Circuit decided *Guerrero Orellana*, other sessions of this Court have responded to the same concession in the same way. In *Erraez Carmona v. Wesling*, where Respondents conceded that the Court would reach the same result it had reached in earlier cases

and submitted that the petition could be resolved without further briefing, the Court held that, "in light of Respondents' concession, the Court follows, as it must, controlling circuit precedent recently established by Guerrero Orellana," that the petitioner "has not received such a hearing, so his detention is unlawful," and that a bond hearing must be held within ten days, with the immigration judge required to state on the record whether the government carried its burden and why less restrictive alternatives would be ineffective. No. 26-cv-13722-WGY (D. Mass. Aug. 25, 2026) (Burroughs, J., sitting as emergency session judge) (ECF No. 10); *accord Quijosaca Paltan v. Wesling*, No. 26-cv-13503-WGY (D. Mass. Aug. 26, 2026) (Burroughs, J., sitting as emergency session judge) (ECF No. 9). In *Kuach Deng v. Wesling*, where Respondents "admitted that Petitioner is discretionarily detained under 8 U.S.C. § 1226(a) and eligible for a bond hearing but argued that Petitioner should not be immediately released largely because he has not exhausted," the Court found that assertion "proven incorrect" and, in light of the petitioner's repeated, denied requests for a hearing, his lack of any criminal history, and his ties to the community, ordered that he "be immediately released from ICE custody." No. 1:26-cv-14165-AK (D. Mass. Sept. 16, 2026) (Kelley, J.) (ECF No. 39). Further, in *Contento Labanda v. Moniz*, after Respondents conceded that "the same result" would follow from the Court's earlier rulings, "the Court promptly allowed the petition" and ordered release by a date certain unless a § 1226(a) hearing applying the burdens of proof defined by binding First Circuit precedent was held before then. No. 1:26-cv-12702-LTS, slip op. at 1 (D. Mass. Sept. 10, 2026) (Sorokin, J.) (ECF No. 12). Respondents' motion does not acknowledge any of these decisions, much less explain why this Court should depart from them.

### C. The Habeas Statute and the Character of the Writ Require a Prompt Decision

Congress has prescribed the pace at which a habeas petition must proceed, directing that the court to which an application is made "shall forthwith award the writ or issue an order directing

the respondent to show cause why the writ should not be granted," the return is due "within three days unless for good cause additional time, not exceeding twenty days, is allowed," and the court "shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. The writ is "the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action," *Harris v. Nelson*, 394 U.S. 286, 290–91 (1969), and it affords "a swift and imperative remedy in all cases of illegal restraint or confinement," *Fay v. Noia*, 372 U.S. 391, 400 (1963) (quoting *Sec'y of State for Home Affs. v. O'Brien*, [1923] A.C. 603, 609 (H.L.)), *overruled in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). The Supreme Court has accordingly described the habeas ideal as "a swift, flexible, and summary determination" of the petitioner's claim. *Browder v. Dir., Dep't of Corr.*, 434 U.S. 257, 271 (1978) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 495 (1973)). The fourteen days the Court allowed Respondents to respond already exceeded the three-day period the statute establishes as the norm, and Respondents used that time to concede the merits before asking for an additional period of no defined length.

The urgency built into the habeas statute also constrains the discretion that ordinarily permits a court to stay civil litigation for reasons of convenience or economy, because "habeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). For that reason, "considerations of judicial economy," although appropriate, "cannot justify the indefinite, and potentially lengthy, stay" of a habeas petition, *id.* at 1120–21, and "[t]he writ of habeas corpus, challenging illegality of detention, is reduced to a sham if . . . trial courts do not act within a reasonable time," *id.* at 1120 (quoting *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978)). That principle applies with particular force where, as here, the petitioner is a civil detainee who

has never been charged with a crime, whose detention the custodian concedes is governed by a statute that entitles him to a hearing, and who has nonetheless been held for nearly four weeks without one.

## II. RESPONDENTS HAVE NOT CARRIED THEIR BURDEN TO JUSTIFY HOLDING THE PETITION IN ABEYANCE

Although the power to stay proceedings is incidental to a court's inherent power to control its docket, the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). The First Circuit has accordingly cautioned that "stays cannot be cavalierly dispensed," that "there must be good cause for their issuance," that "they must be reasonable in duration," and that "the court must ensure that competing equities are weighed and balanced." *Marquis v. FDIC*, 965 F.2d 1148, 1155 (1st Cir. 1992). A movant seeking a discretionary stay "must carry a heavy burden," which requires a showing of "a clear case of hardship," *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (quoting *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983)), and the court must weigh the non-moving party's interest in proceeding expeditiously and in avoiding the prejudice that delay would cause, *id.* at 78. Respondents have not attempted to make that showing, and they could not make it on this record.

### A. The Requested Abeyance Has No End Date and Would Leave the Timing of Relief Entirely to Respondents

Respondents ask that the Petition be held "until Petitioner's bond hearing is completed." ECF No. 6 at 1. The motion does not say that a hearing has been requested or scheduled, does not propose a date by which one will occur, and does not commit Respondents to take any step to bring

one about. The abeyance Respondents propose would therefore last as long as Respondents choose to let it last, and it would end only upon an event whose timing Respondents alone control. Respondents also possess, and have not exercised, the authority to resolve Petitioner's custody themselves, because the governing regulations authorize any officer empowered to issue an arrest warrant, in the officer's discretion, to release a noncitizen detained under § 1226(a) on bond or conditional parole. 8 C.F.R. § 236.1(c)(8). The Supreme Court in *Landis* recognized that discretion is abused by "a stay of indefinite duration in the absence of a pressing need," and it held that a stay "is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits." 299 U.S. at 255, 257. The stay Respondents request is framed in no such way, because its force would be spent only when Respondents decide to bring it to an end, and Respondents have identified no pressing need of any kind. *See also Yong*, 208 F.3d at 1120 ("[W]e have never authorized, in the interests of judicial economy, an indefinite, potentially lengthy stay in a habeas case.").

### B. Abeyance Would Inflict Continuing and Irreparable Harm on Petitioner While Sparing Respondents Nothing

Respondents identify no hardship that would result from adjudicating the Petition now, and none exists. They do not seek time to develop facts, to brief an unsettled question, or to await a ruling that could change the governing law in this Circuit, and the only consequence of a ruling against them would be an order requiring them to do, by a date certain and under the correct legal standard, what they represent they are prepared to do anyway. The entire burden of abeyance would instead fall on Petitioner, and "every day Petitioner spends in prison is irreparable harm." *Miti v. Moniz*, 827 F. Supp. 3d 206, 216 (D. Mass. 2026). That harm is acute here, because Petitioner was injured during his arrest, has been ill in custody, has lost the income that supports his young son, and is preparing to defend his removal case from a county jail, and Respondents

have contested none of those facts. ECF No. 1 ¶¶ 2, 26, 30, 35, 43. Where one party faces the continuing loss of liberty and the other identifies no cognizable hardship at all, the balance *Landis* requires admits of only one result.

### C. Respondents' Citation to Pierre v. Wesling Supplies No Basis for Abeyance

Respondents cite *Pierre v. Wesling*, No. 26-cv-14075-WGY (D. Mass. 2026), without parenthetical, quotation, or any description of what that session ordered or why, and a bare docket citation cannot discharge the movant's burden under *Landis*. The docket in *Pierre* reflects only an electronic order allowing the respondents' motion to hold the petition in abeyance "for a period of 3 weeks from the date of this order." Elec. Order, *Pierre v. Wesling*, No. 26-cv-14075-WGY (D. Mass. Sept. 14, 2026) (allowing ECF No. 7). That order states no reasons, does not indicate whether the motion was opposed, and does not suggest that the session considered the authorities discussed in Part I.B above, in which other sessions of this Court, presented with Respondents' identical concession, granted the petition and set a deadline for the hearing. To the extent *Pierre* bears on this motion at all, it undercuts Respondents' position, because the session that allowed abeyance there confined it to a fixed period of three weeks, while Respondents here ask the Court to hold the Petition for as long as it takes Respondents to arrange a hearing they have not requested and the immigration court has not scheduled. Even a bounded abeyance would be unwarranted on this record, moreover, because Petitioner has already been confined for nearly four weeks without any custody determination, and a further three-week delay would extend that period to nearly seven weeks for a man whom Respondents concede the law entitled to a hearing from the outset.

## III. A BINDING ORDER IS NECESSARY BECAUSE RESPONDENTS' CONCESSION IS EXPRESSLY PROVISIONAL AND THE MOOTNESS THEY PREDICT LIES WITHIN THEIR OWN CONTROL

Respondents suggest that the Petition "may become moot" depending on the outcome of a future bond hearing. ECF No. 6 at 1. Whether that hearing occurs, when it occurs, and what position Respondents take at it are all matters within Respondents' control. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,'" and a party asserting that its own voluntary conduct has mooted a case "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–90 (2000) (citation omitted). Respondents have not ceased the challenged conduct at all, because they continue to hold Petitioner without any hearing, and a prediction that they may provide one in the future cannot moot a challenge to a detention that continues today.

Respondents' own motion confirms that their concession cannot substitute for an order of this Court. In the same filing in which they agree that Petitioner is eligible for a bond hearing, Respondents "reserve all rights to appeal," "incorporate by reference the legal arguments they presented in *Guerrero Orellana*," and anticipate that the Supreme Court will resolve "the dispositive issue in this matter." ECF No. 6 at 1 n.1. Respondents thus continue to maintain that Petitioner may lawfully be held without any bond hearing at all, and they have signaled that they will press that position again if the law permits. A concession so qualified provides Petitioner no assurance that a hearing will occur, that it will occur promptly, or that it will be conducted under the standard the Constitution requires in this Circuit. Nor do Respondents represent that the immigration court will entertain a bond request from Petitioner, and the Board of Immigration Appeals has not withdrawn its precedent holding that "Immigration Judges lack authority to hear

bond requests or to grant bond to aliens who are present in the United States without admission," which remains binding on immigration judges under 8 C.F.R. § 1003.1(g). *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Only an order of this Court, setting a deadline, specifying the governing burden of proof, and requiring Respondents to report their compliance, can secure the process to which Respondents concede Petitioner is entitled. Experience in this District confirms that the conduct of the hearing, as well as its timing, warrants the Court's continued supervision, because sessions of this Court have repeatedly been required to order release after bond hearings conducted under their orders failed to satisfy the standards the Constitution requires in this Circuit. *See Atariguana-Buele v. Warden, Plymouth Cnty. Corr. Facility*, No. 26-12168-LTS (D. Mass. June 25, 2026) (Sorokin, J.) (ECF No. 25) (ordering release where the record established "that the bond hearing held in this case failed to comply with this Court's Order and the Constitution's due process guarantee"); *De Paula Ataide Almeida v. Moniz*, No. 1:26-cv-12207-AK (D. Mass. Sept. 18, 2026) (Kelley, J.) (ECF No. 27) (ordering release where, "while the IJ articulated the correct standard of proof, the IJ did not properly apply the Guerra factors").

## IV. THE COURT SHOULD ORDER PETITIONER'S RELEASE OR, AT A MINIMUM, A HEARING WITHIN SEVEN DAYS ON THE TERMS THIS COURT ROUTINELY IMPOSES

Section 2243 directs the Court to "dispose of the matter as law and justice require," and "the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Release is the appropriate remedy here, because Respondents concede that the only statute under which Petitioner may be held is one that leaves detention to an individualized, discretionary determination, and they acknowledge that no such determination has ever been made in the nearly four weeks they have held him. They do not contend that Petitioner is dangerous or likely to flee,

and the uncontested record shows that he has lived at a fixed address in New Bedford for years, has worked steadily, has no criminal conviction, and has every incentive to appear and defend his case. ECF No. 1 ¶¶ 23–28, 42. Courts confronting the same concession have recognized that a custodian who has held a § 1226(a) detainee without any of the statute's procedural protections cannot cure that violation by offering a hearing at some later time, and they have ordered release. *See Castillo-Hernandez v. Warden, Adelanto ICE Processing Ctr.*, No. 5:26-cv-05743-MBK (C.D. Cal. Oct. 9, 2026) (Kaufman, M.J.) (ECF No. 10) (ordering release where respondents conceded that § 1226(a) governed and did not dispute that they had provided none of its procedural protections, and reasoning that "[a] bond hearing belatedly conducted at some point in the future is 'no substitute'" for the custody determination that would have supplied a lawful basis for detention in the first instance); *Sanchez Pimentel v. Wesling*, No. 1:26-cv-00494 (D.R.I. July 31, 2026) (McConnell, C.J.) (ECF No. 8) (concluding that, because "the Government did not have the legal authority to detain Mr. Sanchez Pimentel in the first place, and given that it fails to cite any other authority under which he may be detained, it follows then that the proper remedy is to order Mr. Sanchez Pimentel's immediate release"); *Kuach Deng*, No. 1:26-cv-14165-AK (ECF No. 39); *Orellana-Lopez v. Nessinger*, No. 1:26-cv-00650-MRD-PAS (D.R.I. Sept. 22, 2026) (DuBose, J.) (text order granting petition and ordering release the same day where "[t]here [was] no dispute that Petitioner was arrested pursuant to an arrest warrant citing Section 236 of the Immigration and Nationality Act, which provides for discretionary detention under 8 U.S.C. § 1226").

If the Court is not inclined to order release outright, it should grant the Petition and order the relief that sessions of this Court have routinely ordered in this posture, which would include (1) construing the Petition as Petitioner's request for a custody redetermination, as Judge Young did in *C.E.L.*, slip op. at 3; (2) ordering that a bond hearing be held within seven days of the Court's

order, at which the government bears the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or by a preponderance of the evidence that he poses a risk of flight, *Hernandez-Lara*, 10 F.4th at 41, and at which the immigration judge, if the government carries its burden, states on the record the evidence relied upon and why less restrictive alternatives to detention would be ineffective, *see Erraez Carmona*, No. 26-cv-13722-WGY (ECF No. 10); *Atariguana-Buele*, No. 26-12168-LTS (ECF No. 25); (3) ordering Petitioner's release on reasonable conditions if no such hearing is held within that period; (4) ordering Respondents to file a status report within forty-eight hours of the hearing stating whether Petitioner has been released and, if bond was denied, the reasons for the denial; and (5) continuing in effect the prohibitions on transfer and removal set forth in the Court's Order of October 2, 2026, ECF No. 4 ¶ 4(a), pending further order.

**CONCLUSION**

WHEREFORE, Petitioner respectfully requests that the Court (1) deny Respondents' Motion to Hold Petition in Abeyance, ECF No. 6; (2) grant the Petition for Writ of Habeas Corpus, ECF No. 1; (3) order Petitioner's immediate release from custody on reasonable conditions of supervision; (4) in the alternative, order Respondents to provide Petitioner, within seven days, a bond hearing before an immigration judge on the terms set forth in Part IV above, with release to follow if no such hearing is held, and to file a status report within forty-eight hours of that hearing; (5) continue in effect the prohibitions on transfer and removal in the Court's Order of October 2, 2026; and (6) grant such other and further relief as the Court deems just and proper.

Dated: October 17, 2026

Respectfully submitted,

MARIO MEJIA GARCIA,

By his attorney,

**/s/ Jacob S. Binnall**
Jacob S. Binnall (BBO No. 712846)
Law Office of Jacob Binnall, PLLC
43 Park Street #17
Framingham, MA 01702
Telephone: (508) 656-4540
Email: jacob@attorneybinnall.com
Counsel for Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the Court's CM/ECF system on October 17, 2026, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including counsel for Respondents.

**/s/ Jacob S. Binnall**
Jacob S. Binnall